UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18CV-00680-RSE

**VIRGINIA GRIFFIN**                                                                   **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL,** *Acting*
*Commissioner of Social Security*                                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Virginia Griffin's application for disability insurance benefits. Griffin seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Griffin (DN 13) and the Commissioner (DN 17) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 14).

### I. Background

Virginia Griffin is 56 years old, lives with her sister and her sister's two children, and has an associate's degree. (Tr. 51-52). Griffin worked for Breckinridge Health as an executive secretary from 1996-2002, then as IT director from 2002-2014.[1] (Tr. 53). She claims she stopped

---

[1] The Commissioner's Fact & Law Summary incorrectly states that Griffin has a high school education and previously worked as a lead machine operator and a roofer. (DN 17, at p. 1 (citing Tr. 233)).

working in 2014 after being diagnosed with breast cancer and cancer in her lymph nodes because she didn't have the physical strength to complete tasks and did not have the mental capacity or will to work. (Tr. 58). In April of 2014, Griffin underwent surgery to remove the "invasive mammary carcinoma" and the cancer that had spread to her lymph nodes. (Tr. 54). Griffin claims that her post-surgery recovery was difficult and led to permanent lymphedema in her right arm. (Tr. 55). This lymphedema, Griffin complains, causes pain in her shoulder, back, and arm while sitting down and prevents her from performing basic household chores and from working. (Tr. 59-60).

Griffin applied for disability insurance benefits ("DIB") from the Social Security Administration under Title II, claiming she became disabled on January 31, 2014 (Tr. 241), as a result of stage 1 breast cancer, stage 1 cancer of the lymph nodes, sleep apnea, anxiety, and depression. (Tr. 245). Her application was denied initially (Tr. 107) and again on reconsideration (Tr. 123). Administrative Law Judge Jennifer Thomas ("ALJ Thomas") conducted a hearing in Paducah, Kentucky, on June 13, 2017. (Tr. 49). Griffin appeared by video with her attorney in Owensboro, Kentucky. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ Thomas issued an unfavorable decision on September 11, 2017. (Tr. 40).

ALJ Thomas applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Griffin has not engaged in substantial gainful activity since January 31, 2014. (Tr. 30). Second, Griffin has the following severe impairments: "history of breast cancer; right arm lymphedema, depression and anxiety[.]" (*Id.*). Third, none of Griffin's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 31).

Between the third and fourth steps, ALJ Thomas found Griffin has the residual functional capacity to perform "light work" with the following limitations:

> [s]he can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can frequently reach overhead and all around with her right upper extremity. She can frequently handle, finger and feel with her right upper extremity. She should avoid concentrated exposure to extreme cold/heat, humidity, vibration, fumes, odors, gases, and poor ventilation. She should avoid all exposure to moving mechanical parts and unprotected heights. She can have frequent interaction with coworkers, supervisors, and the public.

(Tr. 33). Fourth, Griffin is unable to perform her past relevant work.[2] (Tr. 39). Fifth and finally, considering Griffin's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*).

Based on this evaluation, ALJ Thomas concluded that Griffin was not disabled, as defined in the Social Security Act, from January 31, 2014 through the date of the decision. (Tr. 40). Griffin appealed ALJ Thomas' decision. The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Griffin sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial

---

2 Although Finding No. 6 reads that "[t]he claimant is unable to perform any past relevant work," ALJ Thomas explains below the Finding that "[d]ue to some uncertainty regarding the testimony of the past relevant work, the undersigned defers further discussion and moves on to step five of the sequential evaluation." (Tr. 39).

evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III. Analysis

A. Finding No. 5 – Residual Functional Capacity

Griffin mounts two challenges to ALJ Thomas' Finding No. 5, the residual functional capacity ("RFC") determination. The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1. Inconsistencies within ALJ Thomas' RFC

First, Griffin asserts that two aspects of ALJ Thomas' RFC determination were inconsistent with other statements ALJ Thomas made throughout her opinion. (DN 13-1, at pp. 3-5). Griffin takes issue with ALJ Thomas' RFC finding that Griffin can have "frequent interaction with coworkers, supervisors and the public" because at least four times elsewhere in the opinion ALJ

4

Thomas stated that Griffin should avoid "constant interaction with others." (*Id.* at p. 3). Griffin similarly alleges that ALJ Thomas' RFC finding that Griffin can "frequently reach overhead and all around with her right upper extremity [and] can frequently handle, finger, and feel with her right upper extremity" conflicts with ALJ Thomas' statement that "[d]ue to her right arm lymphedema, it is reasonable that [Griffin] would have difficulty performing work that required constant reaching, handling, fingering or feeling with her right upper extremity." (*Id.* at p. 4). These contradictions, Griffin argues, require ALJ Thomas' decision be remanded. (*Id.*). The Commissioner responds that ALJ Thomas thoughtfully and extensively addressed the medical evidence and opinions of record in forming her RFC determination. (DN 17, at p. 4).

As an initial matter, Griffin seems to conflate the terms "frequently" and "constantly." In the context of social security cases, "frequently" and "constantly" are distinct terms of art. An activity that is performed "frequently" exists from as little as one-third of the time up to (but not exceeding) two-thirds of the workday. *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *8 (N.D. Ohio June 11, 2018) (citing *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C*); *see also* SSR 83-10, 1983 WL 31251, at *5 ("'Frequent' means occurring from one-third to two-thirds of the time."). In an eight-hour workday, the ability to perform an activity "frequently" means performing that activity for 2.6 to 5.3 hours cumulatively, not continuously. *See Porter v. Berryhill*, No. 1:17cv0963, 2018 WL 1973684, at *16 (N.D. Ohio, Mar. 2, 2018); *Montgomery v. Astrue*, No. 08-312-ART, 2009 WL 1421039, at *4 n. 1 (E.D. Ky. May 20, 2009). Whereas, an activity performed "constantly" exists for two-thirds of the workday or more. *Woodall*, 2018 WL 3133442, at *8 (citing *Selected Characteristics of Occupations*). ALJ Thomas' determinations that Griffin could perform certain activities frequently do not contradict her statements elsewhere in the opinion that Griffin cannot

5

perform the same activities constantly.

Even setting aside the semantic distinction of these terms, ALJ Thomas' RFC determinations that Griffin could perform certain activities frequently are supported by substantial evidence in the record. ALJ Thomas' narrative discussion following her RFC finding spans almost seven pages, addresses evidence of both Griffin's physical and mental impairments from the record, considers the medical opinions of record, and assesses Griffin's credibility. (Tr. 33-39). ALJ Thomas thoroughly explained how she reached each finding.

For instance, in evaluating Griffin's use of her extremities, ALJ Thomas referenced and credited Dr. Smith's permanent restriction that Griffin could not lift more than twenty pounds with her right arm after her surgery. (Tr. 35). This twenty-pound lifting restriction is consistent with "light work" as defined by the regulations. *See* 20 C.F.R. § 404.1567(b). ALJ Thomas also pointed to office visits in March and April of 2017 at Breckinridge Primary Care where Dr. Smith observed Griffin having normal muscle tone and strength, normal gait and station, and normal deep tendon reflexes. (Tr. 35). Beyond these normal findings, ALJ Thomas discussed a single visit where Dr. Smith noted Griffin's "mild" swelling with pain and atrophy of her right arm and difficulty using her right dominant hand due to lymphedema, which worsens during long periods of sitting. (*Id.*). Based on Dr. Smith's observations and treatment records, ALJ Thomas concluded that although Griffin would reasonably have "difficulty performing strenuous lifting/carrying and constant reaching, handling, fingering and feeling with her right upper extremity," there were no findings suggesting she could not perform a range of light work for such activities. (Tr. 35-36). This range of light work permits Griffin to "frequently reach overhead and all around with her right upper extremity" and "frequently handle, finger and feel with her right upper extremity." (Tr. 33).

Likewise, in evaluating Griffin's mental impairments, specifically her ability to interact

6

with others, ALJ Thomas discussed a consultative psychological exam by Dr. Paul Suich from September of 2014 (Exs. 9F; 18F), evaluation by Sue Levy, Psy.D. for depression and anxiety in March of 2015 (Ex. 15F), and treatment at Estes Behavioral Health in December of 2016 (Ex. 22F). (Tr. 36-37). ALJ Thomas noted records indicating a change in Griffin's personality from "outgoing to reclusive" and that Griffin reported having "significant social anxiety and underlying social withdrawal." (Tr. 36). Because of those and other treatment notes, ALJ Thomas concluded that "it is reasonable that [Griffin] would have difficulty performing work that required constant interaction with others." (Tr. 37). But ALJ Thomas also pointed to treatment notes indicating that Griffin displayed good social skills, an understanding of solution-focused ideas and social interactions, good eye contact, positive attitude, and cooperative and attentive behavior during evaluation with "no gross behavioral abnormalities." (Tr. 36-37). Again, ALJ Thomas' finding that although Griffin could not constantly interact with others due to her social anxiety, she could frequently do so, is supported by the treatment notes from her various mental health providers.

For these reasons, the Court finds that ALJ Thomas' conclusions that Griffin could frequently reach overhead and all around with her right upper extremity, frequently handle, finger, and feel with her right upper extremity, and frequently interact with coworkers, supervisors and the public are not contradicted by other parts of ALJ Thomas' evaluation and, instead, are supported by substantial evidence in the record.

### 2. Dr. Smith's Treating Physician Opinion

Griffin claims that ALJ Thomas failed to afford proper weight to the opinion of Griffin's treating physician, Dr. Ben Smith, in her RFC determination. (DN 13-1, at pp. 6-8). Griffin believes that Dr. Smith's own records and the records of other providers are consistent with Dr. Smith's restrictive opinion. (*Id.* at p. 6). The Commissioner counters that ALJ Thomas properly

discounted Dr. Smith's opinion by identifying inconsistent observations from Dr. Smith's treatment notes. (DN 17, at pp. 7-8).

The regulations require administrative law judges to evaluate every medical opinion in the record. 20 C.F.R. 404.1527(c). The source of a medical opinion dictates the process by which the administrative law judge gives it weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Treating sources must be given controlling weight if their opinions are "well supported by medically accepted clinical and laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence" in the claimant's case record. 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376. If the administrative law judge determines a treating source should not receive controlling weight, she applies factors from the regulations to determine the appropriate weight to assign the opinion. These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the record, and the treating source's area of specialty.[3] 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The administrative law judge must also provide "good reasons" in her decision for the weight being assigned to the treating source opinion. 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376.

Here, ALJ Thomas gave "little weight" to Dr. Smith's treating physician opinion based on the factors in 20 C.F.R. § 404.1527(c). ALJ Thomas identified Dr. Smith as Griffin's family practitioner and noted that Dr. Smith saw Griffin two to three times a year. (Tr. 38). ALJ Thomas afforded Dr. Smith's assessment little weight for several reasons. ALJ Thomas first noted that Dr. Smith's treatment notes were inconsistent with his disabling limitations. Notably, during the visit

---

[3] Nevertheless, the regulations do not require an exhaustive factor-by-factor analysis to satisfy the rule. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

where Dr. Smith completed the assessment, he observed Griffin as healthy appearing, well-nourished, and well-developed and noted that while she had mild swelling and her lymphedema became more problematic with sitting, the findings were minimal. (Tr. 38). Because Dr. Smith noted Griffin had normal muscle tone, strength, gait and station, sensation, and reflexes, ALJ Thomas concluded "[t]here were no findings indicating abnormalities that would cause the disabling limitations opined by Dr. Smith." (*Id.*).

After reviewing Dr. Smith's opinion and the record evidence, the undersigned agrees with ALJ Thomas' conclusion that the significant limitations listed by Dr. Smith do not align with his treatment notes. Dr. Smith's "physical residual functional capacity assessment" from April 19, 2017, diagnosed Griffin with breast cancer, panic disorder, lymphedema in the right arm, and acalculus cholecustitis and stated that her prognosis will not improve. (Tr. 692). He opined that Griffin's impairments have lasted or can be expected to last at least twelve months. (*Id.*). For functional limitations, Dr. Smith estimated that Griffin could sit twenty minutes at a time before needing to get up, stand thirty minutes at one time before needing to sit down or walk around, and that she could sit and stand/walk less than two hours total in an eight-hour working day. (Tr. 693-94). Dr. Smith further noted that Griffin has significant limitations with reaching, handling, or fingering and that she could never (0% of the time) use her right hand, fingers, and arm for grasping, turning, and twisting objects, fine manipulation, or reaching overhead. (Tr. 695).

Dr. Smith's treatment notes tell a somewhat different story. The physical exam notes from Griffin's visits with Dr. Smith on March 10 and March 24, 2017, detail that Griffin was "healthy-appearing, well-nourished, and well-developed" and reported no arm pain on exertion. (Tr. 608-09; 611-12). Dr. Smith's treatment notes from these visits also indicated that Griffin was in no acute distress, that her tone and motor strength were normal, that she had normal movement of all

9

extremities, and that she had no contractures, malalignment, tenderness, or bony abnormalities of her joints, bones, and muscles. (Tr. 610, 613). Dr. Smith only noted Griffin's musculoskeletal abnormalities during one visit, on April 19, 2017. (Tr. 699). At that visit, Dr. Smith mentioned Griffin's reports of muscle aches, back pain, and swelling in the extremities all related to her right arm and pain in her neck and shoulder. (*Id.*). On physical examination, Dr. Smith noted Griffin's limited range of motion, her "mild swelling over the right arm with pain and atrophy over the right arm and right chest" and that her lymphedema becomes more problematic if she sits for a long period of time and limits her ability to work.[4] (Tr. 700). But Dr. Smith's notes from April 19, 2017, additionally stated that Griffin's muscle strength and tone remained normal, she had no contractures, malalignment, tenderness, or bony abnormalities, and that she remained healthy-appearing, well-nourished, well-developed, and in no acute distress. (Tr. 700). Although Dr. Smith's notes from April 19, 2017, highlight Griffin's right arm impairments relating to her lymphedema, these observations still do not equate with the restrictive limitations and finding of total disability in Dr. Smith's opinion.

Griffin claims that the records of her other providers are consistent with the findings in Dr. Smith's residual functional capacity assessment. (DN 13-1, at pp. 7-8). She specifically references her reports to a provider at Breckinridge Health, Inc. on June 19, 2014 of "tingling on the right" and "weakness in her right arm" and her reports to Dr. Sue Levy in March of 2015 that she was "barely . . . able to care for herself since her diagnosis and surgery" and her "persistent anxiety and/or physical discomfort" as corroborating evidence for Dr. Smith's restrictive limitations. (*Id.*).

---

4 The record also contains other earlier records from Breckinridge Health, Inc., but it is unclear whether these visits were with Dr. Smith (Tr. 404-419; 534-36). Some of these records briefly mention Griffin's complaint of tingling and weakness of her right arm in June of 2014 and complaint of numbness in her right upper arm in November and December of 2016 and lymphedema. Many of these visits, however, focus on unrelated issues or occurred before Griffin's claimed disability onset date. (*See* Tr. 408-19).

The portions of the cited records cannot be considered objective evidence supporting Dr. Smith's RFC. The cited notes from the BHI record from June 19, 2014, include only subjective complaints Griffin made to her provider regarding her symptoms. (DN 13-1, at p. 7 (citing Tr. 404)). The cited notes from Dr. Levy on March 13, 2015, likewise, are mostly comprised of Griffin's subjective complaints. (Tr. 480-81). Moreover, Griffin only saw Dr. Levy on one occasion and none of Dr. Levy's observations match or support the limitations from Dr. Smith's RFC.

ALJ Thomas' decision to not afford controlling weight to Dr. Smith's treating physician opinion addressed the appropriate regulation factors and listed good reasons for her weight determination, notably the inconsistencies between Dr. Smith's restrictive opinion and his treatment notes. The Court finds ALJ Thomas' decision to afford Dr. Smith's assessment little weight is supported by substantial evidence in the record and comports with the applicable regulations.

B. Finding No. 6: Past Relevant Work

Griffin also challenges ALJ Thomas' Finding No. 6 that Griffin is unable to perform any past relevant work. (Tr. 39). At this step, ALJ Thomas discussed the vocational expert's testimony that Griffin's past relevant work as an IT director was skilled, sedentary work that would require some walking. (*Id.*). ALJ Thomas continued: "[d]ue to some uncertainty regarding the testimony of the past relevant work, the undersigned defers further discussion and moves on to step five of the sequential evaluation." (*Id.*). Griffin claims that ALJ Thomas' recognition of "uncertainty" in the vocational expert's testimony demonstrates the vocational expert's testimony was incomplete and incompetent. (DN 13-1, at pp. 8-9). This deficiency, Griffin asserts, could have been remedied by issuing the vocational expert interrogatories or by conducting a supplemental hearing. (*Id.*).

The Commissioner argues that regardless of vocational expert's uncertain testimony, Griffin was not harmed by ALJ Thomas' decision to continue to Step Five of the analysis. (DN 17, at p. 10).

At step four of the sequential evaluation, the administrative law judge must determine whether the claimant can still perform her past relevant work by comparing the residual functional capacity determination to the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 4040.1520(f). If a claimant can still perform her past relevant work, she will not be found disabled. *Id.;* 20 C.F.R. § 404.1560(b)(3). If a claimant cannot still perform her past relevant work, then the administrative law judge continues to step five to consider whether the claimant can make an adjustment to any other work. *Id.* at (c). The administrative law judge generally uses a vocational expert to make the step four determination. 20 C.F.R. § 404.1560(b)(2).

During Griffin's hearing, the vocational expert expressed some uncertainty when asked whether a person with hypothetical residual capacity limitations could perform past work as an IT director. (Tr. 75). The vocational expert stated that an individual with no use of her right arm could "probably" do the past work as an IT director "with 15 years of experience" but that traditionally such an individual could not perform the past work "because it's a lot of keyboard work." (*Id.*). ALJ Thomas, seeking clarification, then asked: "given this individual's number of years as an IT person, they possibly could do it even though they couldn't use their right arm?" The vocational expert responded: "[a]s a general rule, no." (*Id.*). It appears the vocational expert initially believed a hypothetical individual could "probably" perform the past relevant work" but subsequently changed his answer to "no." (*Id.*).

While the Court agrees the vocational expert's answer to the hypothetical shifted, this does not make the testimony incomplete or incompetent. ALJ Thomas' finding at Step Four, which recognized the vocational expert's uncertainty and moved on to step five of the evaluation, did not

12

result in any prejudice to Griffin. Had ALJ Thomas definitively found that such a hypothetical individual could perform the past relevant work as IT director, Griffin would have been found not disabled at Step Four. Had ALJ Thomas definitively found that such an individual could not perform the past relevant work as IT director, the analysis would have proceeded to Step Five.

ALJ Thomas did not end her analysis at Step Four; she continued to Step Five and determined that Griffin could perform other work that existed in significant numbers in the national economy. As such, an error at step four – if any – was harmless. *See, e.g., Rice v. Comm'r of Soc. Sec.*, No. 12-CV-15690, 2014 WL 521045, at *8 (E.D. Mich. Feb. 10, 2014) (citations omitted). ALJ Thomas' decision to defer further discussion on Griffin's past relevant work does not affect her step-five conclusion that Griffin could perform jobs as an office helper, a survey worker, or a ticket taker. Because ALJ Thomas proceeded to Step Five and continued the evaluation process and Griffin has not otherwise shown prejudice resulting from this determination, the Court finds no error in ALJ Thomas' analysis at Step Four.[5]

## ORDER

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

August 27, 2019

Regina S. Edwards, Magistrate Judge
United States District Court

---

[5] In the conclusion to her Fact and Law Summary, Griffin makes a last-ditch attempt at arguing that "this should be a GRID case." (DN 13-1, at p. 9). Since Griffin mentioned this issue in a "perfunctory manner, unaccompanied by some effort at developed argumentation," the Court deems this argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).